IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02451-PAB-MJW

TONYA DUNLAP,

      Plaintiff,

v.

SPEC PRO, INC., a foreign corporation,

      Defendant.

---

**ORDER**

---

      This matter is before the Court on Plaintiff's Motion for Attorney Fees [Docket No. 75] filed by plaintiff Tonya Dunlap.

## I. BACKGROUND

      On September 16, 2011, Ms. Dunlap filed this action against defendant Spec Pro, Inc. ("Spec Pro"). Docket No. 1. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Ms. Dunlap alleged (1) discrimination on the basis of sex, (2) retaliation for participating in protected activity, and (3) reckless and wanton gender discrimination in violation of 42 U.S.C. § 1981a. Docket No. 1 at 2-3. Ms. Dunlap sought damages for back pay, front pay, loss of earning capacity and future incapacity, emotional distress, loss of enjoyment of life, and punitive damages. *Id.* at 3. The Court dismissed Ms. Dunlap's retaliation claim on summary judgment, finding:

> Given that Ms. Dunlap does not establish that Spec Pro treated her any differently than other similarly situated employees, she does not show that Spec Pro's reason for her termination was pretextual. Instead, the undisputed evidence establishes that she was given the full extent of her

> short-term disability benefits, Spec Pro transitioned her to long-term disability because of the weight bearing restrictions, and she did not re-apply for a position with Spec Pro.  Based on the foregoing, Ms. Dunlap fails to raise any genuine inconsistencies, incoherencies, or contradictions with Spec Pro's legitimate non-discriminatory reason for termination and no reasonable jury could conclude that Ms. Dunlap's termination was retaliatory.

Docket No. 64 at 23 (citations omitted).  On April 8-11, 2013, Ms. Dunlap's hostile work environment claim was tried to a jury.  Docket Nos. 70-73.  The jury found in favor of Ms. Dunlap on her claim that she was subject to a hostile or abusive work environment because of her sex based on the conduct of her co-workers.  Docket No. 73-1 at 1.  However, on Ms. Dunlap's claim that she was subject to a hostile or abusive work environment based on the conduct of her supervisors, the jury found in favor of Spec Pro.  *Id.*  The jury awarded Ms. Dunlap $1.00 in nominal damages and did not award her compensatory or punitive damages.  *Id.* at 2.

On April 26, 2013, Ms. Dunlap filed the instant motion.  Docket No. 75.  Pursuant to 42 U.S.C. § 2000e-5(k), Ms. Dunlap seeks $70,661.70 in attorney's fees.  *Id.* at 2.  Spec Pro argues that, because the jury awarded Ms. Dunlap nominal damages, Ms. Dunlap is not entitled to an award of attorney's fees or, in the alternative, that Ms. Dunlap's award of attorney's fees should be reduced accordingly.  Docket No. 77 at 7.

## II.  ANALYSIS

### A.  Ms. Dunlap's Failure to Prove Compensatory Damages

In actions brought under Title VII of the Civil Rights Act, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ."  42 U.S.C. § 2000e-5(k).  "Congress intended to permit the . . . award of counsel fees only when a party has prevailed on the merits of at least some of his claims."  *Hanrahan v.*

*Hampton*, 446 U.S. 754, 758 (1980).[1]  "[A] plaintiff who wins nominal damages is a prevailing party" for purposes of awarding attorney's fees under Tile VII.  *Farrar v. Hobby*, 506 U.S. 103, 112 (1992).  The "'*degree* of the plaintiff's success' does not affect 'eligibility for a fee award.'"  *Id.* at 114 (quoting *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 789 (1989)).  Thus, where Ms. Dunlap achieved a judgment in her favor for nominal damages, the Court finds that Ms. Dunlap is a prevailing party entitled to reasonable attorney's fees.

Once plaintiff has "crossed the 'statutory threshold' of prevailing party status," a district court must ensure that an award of attorney's fees is warranted.  *Tex. State Teachers Ass'n*, 489 U.S. at 789-90.  The "'technical' nature of a nominal damages award . . . does bear on the propriety of fees awarded."  *Farrar*, 506 U.S. at 114.  In the Tenth Circuit, a district court's discretion to entirely deny attorney's fees to a prevailing party is narrow.  *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  However, the prevailing party's award request for attorney's fees must be evaluated based upon: "(1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation."  *Id.* (citing *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring)).  "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, . . . the only reasonable fee is usually no fee at all."  *Id.* at 115.

---

[1]The Supreme Court has generally recognized that "case law construing what is a 'reasonable' fee applies uniformly to all" fee-shifting statutes under Title VII, e.g. §§ 1988, 2000e-5(k), 7604(d).  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The Court first turns to the "'degree of success obtained,'" which is "'the most critical factor' in determining the reasonableness of a fee award." *Farrar*, 506 U.S. at 114 (quoting *Hensley*, 461 U.S. at 436).  Where, as here, plaintiff's claims for relief were based upon a common set of facts and "related legal theories," the district court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 435.  Ms. Dunlap's complaint did not make a specific monetary demand, although she requested back pay, front pay, loss of earning capacity and future incapacity, emotional distress, loss of enjoyment of life, and punitive damages.  *See* Docket No. 1 at 3.  The dismissal of Ms. Dunlap's retaliation claim eliminated her request for back pay and front pay, leaving the jury to consider whether Ms. Dunlap proved non-economic and punitive damages.  *See* Docket No. 64 at 23.  The fact that the jury ultimately awarded only $1.00 in nominal damages suggests that some reduction in the requested attorney's fees is appropriate, especially where Ms. Dunlap's retaliation claim did not survive summary judgment.

However, the Tenth Circuit has recognized that a lack of success in proving damages is not dispositive where other interests are implicated.  *See, e.g.*, *Phelps*, 120 F.3d at 1132 (finding that, where plaintiffs prevailed on only one of four claims, declaratory judgment in plaintiffs' favor overturning state statute as unconstitutionally vague "does not weigh in favor of characterizing the plaintiffs' victory as merely technical or *de minimis*"); *Koopman v. Water Dist. No. 1 of Johnson Cnty., Kan*, 41 F.3d 1417, 1421 (10th Cir. 1994) (reversing denial of attorney's fees because plaintiff's

nominal damages award benefitted other employees by placing defendant on notice that its termination proceedings were constitutionally inadequate).  The Court finds that this is just such a case.  At trial, there was significant testimony describing the general nature of the work environment at Spec Pro.  Spec Pro's human resources investigator said of Ms. Dunlap's workplace, "everyone was voluntarily participating in unwelcome conduct or misconduct."  Docket No. 80 at 7, p. 412:20-21.  The evidence presented at trial suggested that this environment persisted for a significant period of time before Spec Pro took corrective action.  Spec Pro claims that, by failing to prevail on her claim of supervisor sexual harassment, Ms. Dunlap did not show that Spec Pro's management level employees contributed to the hostile work environment.  Docket No. 77 at 5-6.  The jury's verdict on Ms. Dunlap's supervisor sexual harassment claim, while rejecting a claim that her supervisors sexually harassed her, does not indicate that the jury found that Spec Pro's management level employees were unaware of the existence of a hostile work environment.  *See* Docket No. 73-2 at 12.  Rather, by finding in Ms. Dunlap's favor on her claim of co-worker sexual harassment, the jury necessarily found that management level employees knew or should have known of the hostile work environment present at Spec Pro and failed to take prompt and appropriate corrective action.  *See id.* at 10.  Although Spec Pro claims that the work environment was eventually corrected, Ms. Dunlap's victory benefits future employees by placing Spec Pro on notice that it must maintain a workplace free from sexual harassment. Moreover, this case was filed and tried to a jury in less than two years and, as such, was not unnecessarily protracted in relation to the relief obtained.  *See Brandau v. State of Kan.,* 168 F.3d 1179, 1182 (10th Cir. 1999); *cf. Farrar*, 506 U.S. at 116

(O'Connor, J., concurring) (noting that 10 years of litigation and two appeals yielding one dollar in damages was unnecessarily protracted litigation). The Court finds that this factor is neutral.

The second factor examines the "extent to which the plaintiff[] succeeded on [her] theory of liability." *Phelps*, 120 F.3d at 1132. Although Ms. Dunlap's retaliation claim did not survive summary judgment, she succeeded on her hostile work environment claim. *See Brandau*, 168 F.3d at 1182 ("although [plaintiff] lost her retaliation and constructive discharge claims," verdict in plaintiff's favor on sexual harassment claim was significant legal issue on which the plaintiff prevailed). Spec Pro argues that Ms. Dunlap's failure to prevail on her claim of supervisor sexual harassment indicates only minimal success. Docket No. 77 at 5. Nonetheless, the jury concluded that a hostile work environment existed at SpecPro. The Court finds that this factor weighs in Ms. Dunlap's favor.

The third factor "considers the public purpose served by the plaintiff['s] success." *Phelps*, 120 F.3d at 1132. Of particular significance is whether "the judgment vindicates important rights and deters future lawless conduct as opposed to merely 'occupying the time and energy of counsel, court, and client.'" *Id.* at 1132 (quoting *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring). Ms. Dunlap presented evidence that reporting harassing conduct to supervisors was frowned upon and often ineffective. Docket No. 78 at 76-77, pp. 76:8-77:7. Spec Pro argues that it corrected such conduct prior to litigation such that the jury verdict will not deter or alter future unlawful behavior. Docket No. 77 at 6. However, although Spec Pro's management level employees may not have encouraged or participated in such behavior, the jury found that management

6

level employees were aware, or should have been aware, of a work environment where sexually harassing comments were commonplace and that Spec Pro failed to take appropriate corrective action.  *See* Docket No. 73-2 at 10.  The Court finds that Ms. Dunlap's success on her hostile work environment claim will benefit current and future employees by further underscoring Spec Pro's obligation to maintain and enforce an effective sexual harassment policy.  *See Brandau*, 168 F.3d at 1182-83 ("Plaintiff's victory put [defendant] on notice that it should reform its sexual harassment policies and that it is proceeding at its peril if it declines to do so.").  The Court finds that this factor weighs in Ms. Dunlap's favor.

Defendant argues that this is a case where "special circumstances would render such an award unjust."  *Phelps*, 120 F.3d at 1129 (internal quotations marks omitted).  However, the Tenth Circuit has held that "the district court's discretion to deny fees to a prevailing plaintiff is quite narrow," *Wilson v. Stocker*, 819 F.2d 943, 951 (10th Cir. 1987), and, in light of the three *Phelps* factors, defendant fails to show that such special circumstances are present in this case.  Thus, the Court finds that Ms. Dunlap's victory was not technical or *de minimis* and that Ms. Dunlap should be permitted an award of reasonable attorney's fees.

### B.  Lodestar Amount

The Court turns to the issue of calculating a reasonable award of attorney's fees given that Ms. Dunlap achieved only limited success.  Although Spec Pro seeks a reduction in Ms. Dunlap's request for attorney's fees, Spec Pro offers no suggestion as to how the Court should reduce such an award.  Docket No. 77 at 7.  In the Tenth

Circuit, even where a plaintiff's fee request includes fees incurred litigating claims that do not reach the jury, a court must first calculate the lodestar amount: "'the total number of hours reasonably expended multiplied by a reasonable hourly rate-and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome.'" *Zinna v. Congrove*, 680 F.3d 1236, 1239, 1242 (10th Cir. 2012) (quoting *Phelps*, 120 F.3d at 1131).

Attorney Michael Waters claims that he spent a total of 256.9 hours litigating Ms. Dunlap's case. Docket No. 75 at 3. In determining the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n. 4 (1987). Plaintiff must demonstrate that her counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).[2] If not, a court should take extra care to ensure that an attorney has not included unjustified charges in his billing statement. *Id*. A court should also consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering. *Id*. Ultimately, the Court's goal is to fix a fee that would be

---

[2]"In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos*, 713 F.2d at 554.

equivalent to what the attorney would reasonably bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Ramos*, 713 F.2d at 553. The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

Mr. Waters' billing records raise multiple issues. First, Mr. Waters claims that his billing records erroneously indicate that two other attorneys expended time in this case, *see* Docket No. 75-2 at 11, but that all tasks listed in the records were actually completed by him. He states that the other attorneys' initials have not been corrected because counsel knows the attorneys referenced in the billing documents were not involved in the case. Docket No. 75-1 at 1. The Court accepts Mr. Waters' explanation of this error. Second, Mr. Waters' billing records indicate that 0.8 hours were expended by Kaye Reis. Docket No. 75-2. Because Mr. Waters provides no information as to Kaye Reis' title, identity, or qualifications, the Court will subtract the 0.8 hours billed by Kaye Reis. Third, Mr. Waters' records reflect a 3.0 hour charge for Jeffrey A. Garcia, who "Attended pretrial hearing with Mike Waters (No charge)." Docket No. 75-2 at 10. However, the 3.0 hours that Mr. Garcia spent attending the hearing were added to the total submitted by Mr. Waters. *Id.* at 11. Mr. Waters does not explain whether the addition of Mr. Garcia's time was in error. The Court will subtract the 3.0 hours billed by

Mr. Garcia.  The Court has reviewed the remainder of Mr. Waters' billing records and is otherwise satisfied that, given the nature of Ms. Dunlap's claims, Mr. Waters used proper billing judgment in the 253.1 hours expended on Ms. Dunlap's case.

Mr. Water's hourly rate is $275.  Mr. Waters indicates that he has over 30 years of experience practicing law in Colorado and has tried cases in a variety of practice areas.  In order to satisfy her burden, Ms. Dunlap must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).  Because Ms. Dunlap has not provided any additional evidence in support of the proposed rate, the Court can adjust the rate based on its own familiarity with the range of prevailing rates in the Denver market.  *See generally Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1079 (10th Cir. 2002) ("where a district court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate"). However, in this case the Court finds that Mr. Waters' hourly rate of $275 is reasonable. *See James v. Fenske*, No. 10-cv-02591-WJM-CBS, 2013 WL 656821, at *2 (D. Colo. Feb. 22, 2013) (finding customary rate in Denver legal market for two employment law partners to be $275 and $300 based on their experience); *Lopez v. Suncor Energy (U.S.A.) Inc.*, No. 11-cv-00081-LTB-BNB, 2012 WL 695143, at *2 (D. Colo. March 5, 2012) (finding reasonable rate in employment discrimination case was $364.50 for attorney with 19 years experience and $274.50 for attorney with ten years experience).

Having concluded that the lodestar amount in this case is $69,602.50, the Court must now modify the award to reflect the particularities and outcome of Mr. Dunlap's case. *Zinna*, 680 F.3d at 1242.[3]  A court must make "qualitative comparisons among substantive claims before adjusting the lodestar either for excellent results or limited success." *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995).  District courts may modify an award of attorney's fees "by simply reducing the award to account for the limited success of the plaintiff" or "by attempting to identify specific hours that should be eliminated." *Tex. State Teachers Ass'n*, 489 U.S. at 789-90.  The latter approach carries significant difficulties in this case where Ms. Dunlap's hostile work environment and retaliation claims were based upon common issues of fact and law.  In situations where plaintiff's claims for relief were based upon a common set of facts and "related legal theories," the district court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

Ms. Dunlap's two claims were based upon the same set of facts, although only her hostile work environment claim ultimately succeeded on the issue of liability. Distinguishing between the hours spent on Ms. Dunlap's two claims is nearly impossible

---

[3]The Tenth Circuit has suggested that the proper approach to analyzing a request for attorney's fees in this situation may be "*first* assess[ing] whether special circumstances would make any award unjust . . . *then* fix[ing] a reasonable fee." *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229-30 (10th Cir. 2001) (quoting *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1082 (10th Cir. 1998).  However, the Tenth Circuit also noted Justice O'Connor's observation that "'[w]hile that exception to fee awards has often been articulated separately from the reasonableness inquiry, sometimes it is bound up with reasonableness.'" *Barber*, 254 F.3d at 1230 (quoting *Farrar*, 506 U.S. at 118 (O'Connor, J., concurring)).  The Court finds that this is just such a case.

given that both claims required nearly identical fact investigation.  Nonetheless, Ms. Dunlap's counsel expended time defending her retaliation claim on summary judgment. Thus, because Ms. Dunlap's retaliation claim did not survive summary judgment, the Court finds that reducing Ms. Dunlap's award by 15% is warranted.  With respect to reducing Ms. Dunlap's award based upon her limited success on her hostile work environment claim, the Court considers the three *Phelps* factors.  Courts have exercised broad discretion to reduce attorney's fees awards in similar situations.  *See Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 127-28 (1st Cir. 2004) (affirming 33% reduction where plaintiffs were awarded nominal damages on claim for due process violation); *Brandau*, 168 F.3d at 1183 (affirming award of $41,598.13 in attorney's fees where plaintiff sought more than $50,000 and recovered $1.00); *Sanchez v. Matta*, 2005 WL 2313621, at *7 (D.N.M. July 29, 2005) (reducing attorney's fees by 10% where plaintiff won nominal damages); *Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 2005 WL 361510, *2, *6 (D. Kan. Feb. 15, 2005) (reducing lodestar amount by 90% where plaintiff sought $1.4 million in damages but court vacated damages award of $90,000); *Mercer v. Duke Univ.*, 301 F. Supp. 2d 454, 469 (M.D.N.C. 2004) (finding that 20% reduction in Title IX case was appropriate where plaintiff failed to prove compensatory damages).  Ms. Dunlap succeeded in proving that a hostile work environment existed at Spec Pro and in placing Spec Pro on notice of its obligation to maintain and enforce an effective sexual harassment reporting policy.  However, the degree of success obtained carries the most weight in this analysis and, although Ms. Dunlap did not request a specific amount in damages, the Court finds that Ms. Dunlap's

12

failure to prove actual damages warrants reducing her award of attorney's fees by an additional 35%.  Thus, after reducing the lodestar amount of $69,602.50 by a total of 50%, Ms. Dunlap is entitled to attorneys' fees of $34,801.25.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Attorney Fees [Docket No. 75] is **GRANTED** in part and **DENIED** in part as indicated in this Order.  It is further

**ORDERED** that plaintiff TONYA DUNLAP shall be awarded $34,801.25 in attorney's fees.

DATED March 18, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge